FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Nov 18 2025

KEVIN P. WEIMER, Clerk

By: James Jarvis
    Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

PATRICIO ISAAC PALESTINA-NAVARRO

**CRIMINAL COMPLAINT**
Case Number: 1:25-mj-01215

I, the undersigned complainant, depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief: on or about November 17, 2025 in Henry County, in the Northern District of Georgia, **PATRICIO ISAAC PALESTINA-NAVARRO**, aided and abetted by others known and unknown, did knowingly and intentionally possess with intent to distribute a controlled substance, said act involving:

-- at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A)

all in violation of Title 21, Untied States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

I further state that I am a Task Force Officer with the Drug Enforcement Administration, and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant
Amelia Hines

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. **Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1**.

November 18, 2025                              at   Atlanta, Georgia
Date                                                City and State

Hon. CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE                _____
Name and Title of Judicial Officer            Signature of Judicial Officer

**Issued pursuant to Federal Rule of Criminal Procedure 4.1.**
AUSA Brock Brockington – (404) 581-6000

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Amelia K. Hines, Task Force Officer with the Drug Enforcement Administration ("DEA"), depose and say under penalty of perjury, the following:

I submit this affidavit in support of an application for a criminal complaint of the following person:

      a. Patricio Isaac Palestina-NAVARRO

as there is probable cause to believe that on or about November 17, 2025, in the Northern District of Georgia and elsewhere, NAVARRO did knowingly possess with the intent to distribute a controlled substance, said substance involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.

## AFFIANT BACKGROUND

1. I am a certified Georgia Police Officer and have been employed by the Marietta Police Department since 2015. I am currently assigned as Task Force Officer (TFO) with the DEA since February 2025. As a TFO I am assigned to the Atlanta Field Division, Atlanta-Carolinas High Intensity Drug Trafficking Area Task Force (HIDTA) Group Three.

2. I have received training addressing the methods by which (1) drug traffickers possess and distribute controlled substances; (2) conceal and launder the proceeds from the distribution of controlled substances; (3) protect their proceeds and their controlled substances; and (4) attempt to avoid law enforcement detection of their

activities. The controlled substances as to which this training applied included, but were not limited to, marijuana, cocaine, heroin, and methamphetamine.

3. During my law enforcement career, I have participated in search, seizure, and arrest warrants pertaining to the seizure of all types of criminal evidence such as illegal drugs, drug paraphernalia, drug records, drug proceeds, and evidence of other types of crimes and the arrests of individuals involved in drug trafficking activities. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, 952, 960, and 963, and Title 18, United States Code, Sections 1956 and 1957. I have received specialized training in the enforcement of drug laws, with an emphasis on drug trafficking and drug organizations. I have participated in numerous drug cases and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings. I have received specialized training in the use of electronic surveillance.

4. I am familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone conversations, defendant debriefings, the use of confidential sources, undercover operations, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs.

5. I have participated in numerous drug investigations, in which traditional methods of investigation were used that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized.  In connection with those and other narcotics cases, I have participated in follow-up investigations relating to the laundering and concealment of assets, analysis of bank and other financial records, and identification of conspirators through ledgers, telephone bills, records, and photographs.

6. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others, with knowledge of the importation, distribution, and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug trafficking.  I have written and/or participated in search and arrest warrants pertaining to the seizure of all types of criminal evidence, including illegal drugs, drug paraphernalia, drug proceeds, drug records, and evidence of other types of crimes.

7. Based upon training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug trafficker's import and distribute drugs; use cellular telephones to facilitate drug activity; and use numerical codes and coded language to conduct their transactions.  In my experience, drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their drug trafficking activities from law enforcement.  I also am familiar with the ways in which drug traffickers conceal, convert, transmit,

and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds, the use of electronic wires, and the use of off-shore accounts to launder and conceal assets.

## SOURCES OF INFORMATION

8. The facts in this affidavit come from my training and experience as a law enforcement officer, through physical surveillance, well as information obtained from other law enforcement officers. This affidavit does not set forth all of my knowledge about this matter. It is intended to show merely that there is sufficient probable cause for the requested criminal complaint, and does not set forth all of my knowledge about this matter.

## INVESTIGATIVE SUMMARY

9. On September 9, 2025, DEA agents organized the controlled purchase of one kilogram of methamphetamine, using a confidential source (CS) handled by the Marietta Cobb Smyrna Narcotics Unit. That day, a gray Ford F-150 displaying Georgia tag: SFQ8126, arrived at the predetermined meeting location in Rex, Georgia. The CS approached the driver's side door of the gray Ford F-150 and provided the driver, an unidentified Hispanic male (UM), with official authorized funds (OAF) in the amount of the agreed upon purchase price in

exchange for what was later confirmed to be approximately one kilogram of methamphetamine. Following the transaction, DEA agents surveilled the gray Ford F-150 to the area of North Henry Boulevard and Davidson Highway in Stockbridge, Georgia, but did not identify the driver.

10. Agents continued to investigate the supplier of the methamphetamine. On October 6, 2025, with the assistance of cameras equipped with license plate readers, DEA agents were able to locate the gray Ford F-150 parked behind an auto shop located at 5150 North Henry Boulevard. Over the course of the next few weeks, surveillance was conducted on the gray Ford F-150; however, the still unidentified driver utilized counter-surveillance measures while driving, making him difficult to follow in a covert manner.

11. On October 16, 2026, DEA agents conducted surveillance at 5150 North Henry Boulevard. While watching the auto shop, agents observed the UM exchange a package (a red DoorDash bag) with the driver of a motorcycle. Following the exchange, officers with the Morrow Police Department conducted a traffic stop on the motorcycle. The driver of the motorcycle was found to be in possession of the red bag, which contained a package later determined to contain five kilograms of methamphetamine.

12. After several attempts to locate the gray Ford F-150 in and around North Henry Boulevard, agents found it parked in the driveway of a residence at 220 Highland Circle in Stockbridge, Georgia. As a result of the UM's counter-surveillance measures and to assist with their investigation, DEA agents

5

obtained court authorization to install an electronic tracking device (ETD) on the gray Ford F-150. The ETD was installed on October 28, 2025.

13. To further their investigation, DEA agents obtained records from the utility company. DEA agents determined that the name on the Georgia Power bill for 220 Highland Circle was Patricio Isaac Palestina-Navarro. Also, on the power bill was a telephone number – DEA agents determined that the telephone number was associated with an account on the messaging application, WhatsApp. That account has a publicly accessible photograph on the messaging feature – DEA agents compared the photograph to the individual driving the gray Ford F-150 who they had surveilled for several weeks and determined it to be a match. Accordingly, DEA agents identified the UM as NAVARRO.

14. On November 17, 2025, DEA conducted surveillance on NAVARRO while he was driving the gray Ford F-150. DEA agents followed NAVARRO from his residence located at 220 Highland Circle in Stockbridge to a parking lot located near 2080 Lower Roswell Road in Marietta, Georgia. There, DEA agents observed NAVARRO parked near a restaurant. He remained inside his gray Ford F-150 for approximately 90 minutes before an unknown Hispanic male (hereinafter referred to as "UHM") arrive on foot. The UHM entered the passenger seat of the gray Ford F-150, and NAVARRO drove to the rear of the restaurant.

15. Shortly thereafter, DEA agents also drove to the rear of the restaurant, where they observed NAVARRO's gray Ford F-150 parked next to a white Ford

6

work van. Before DEA agents could set up surveillance, both vehicles departed the restaurant, traveling in opposite directions.

16. DEA agents followed NAVARRO driving his gray Ford F-150 back to Stockbridge. While driving on North Henry Boulevard, a Henry County Police Department officer observed an equipment violation on the gray Ford F-150 and initiated a traffic stop. During the traffic stop, a drug detecting K-9 was deployed on the gray Ford F-150. After the K-9 indicated the presence of the odor of controlled substances emanating from within the gray Ford F-150, law enforcement conducted a search and located approximately 25 kilograms of suspected controlled substance inside two large blue duffle bags inside the vehicle. A subsequent field test conducted on the suspected narcotics came back positive for methamphetamine. NAVARRO was detained following the traffic stop; in his possession was a Mexican identification card and a passport, both of which bore NAVARRO's name.

## CONCLUSION

17. Based upon the aforementioned facts, I assert there is probable cause to believe that on or about November 17, 2025, in the Northern District of Georgia, NAVARRO did knowingly possess with the intent to distribute a controlled substance, said substance involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.

## END OF AFFIDAVIT